UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James K., | Case No. 18-cv-822 (ECT/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security,* | |
| Defendant. | |

_____

Stephanie M. Balmer, Falsani, Balmer, Peterson & Balmer, 1200 Alworth Bldg., 306 W. Superior St., Duluth, MN 55802, for Plaintiff

Michael Moss, Social Security Administration, 1301 Young St., Suite A702, Dallas, TX 75202, for Defendant

_____

James K. appeals the Commissioner of Social Security's denial of his Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of December 1, 2014. He contends that the ALJ did not properly evaluate his diabetic neuropathy, that the ALJ's RFC is not supported by substantial evidence in the record, and that the Appeals Council erred in declining to review the ALJ's decision based on newly submitted medical records. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

**I.   ALJ DECISION**

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether

the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued his decision on December 15, 2016. In steps one through three, he found that James K. has not engaged in substantial gainful activity since December 1, 2014; has several severe medically determinable impairments – obesity, status post gastric sleeve surgery, low back pain, degenerative disc disease, major depressive disorder, generalized anxiety disorder, and status post left torn rotator cuff – that do not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1; and has the residual functional capacity (RFC) to perform sedentary work with certain limitations: sit/stand option whereby claimant alternates between sitting and standing at will without going off task; never climbing ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing; occasional stooping; occasional crouching; occasional crawling; occasional kneeling; occasional overhead reaching; occasionally operating foot controls bilaterally; avoid concentrated exposure to extreme temperatures, cold; avoid concentrated exposure to dangers to life or limb in the workplace and vibrations; and not required to work in high, exposed places; with regard to concentration, persistence and pace, work is limited to simple, routine, repetitive tasks; occasional changes in work setting; brief and superficial interaction with others meaning the 5th digit of the DOT code is an "8"; no complex

decision-making; and no rapid, assembly-line paced work (daily quotas but not hourly quotas) in an environment free from illicit drugs and alcohol. R. 48, 51.[1]

At step four the ALJ found that James K. was not capable of performing any past relevant work (PRW). R. 57. At step five the ALJ found him capable of performing other work within the RFC such as electrical assembly, document preparer, and final assembly and therefore not disabled. R. 58.

## II.   STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work, but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

This Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Telkey v. Barnhart*, 433 F.3d 575, 577

---

[1] "R." refers to the Administrative Record, Docket No. 10.

(8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). On review, the Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). If it is possible, based on the evidence in the record, to reach two inconsistent decisions, and one of those decisions is the Commissioner's position, the decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal.").

The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Once the claimant demonstrates that he or she cannot perform past work, the burden "shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## III. ANALYSIS

### A. Newly Submitted Medical Records

James K. contends that the Appeals Council erred in declining to review the ALJ's decision based on the additional medical records he submitted. Pl. Br. 8, Docket No. 12.

The Appeals Council will review an ALJ's decision when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (eff. Jan. 17, 2017).[2]

When the Appeals Council denies review of an ALJ's decision after reviewing newly submitted evidence, a reviewing court does not evaluate the Appeals Council's decision to deny review but rather examines the record as a whole, including the additional evidence, to determine whether it supports the ALJ's decision. *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013). When the Appeals Council denies review without substantively considering newly submitted evidence, the reviewing court may remand the case if it finds the evidence is new, material, and relates to the period of disability at issue. See *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); 20 C.F.R. § 404.970(a)(5) and (c).

---

[2] The regulation also requires the applicant to show "good cause" for not timely submitting the evidence due to certain specified reasons. *Id.* § 404.970(b). However, because James K.'s request to the Appeals Council was pending at the time of the rule change, the council notified him that it would find he had good cause for not submitting the records earlier. R. 10.

5

The relevant period for James K.'s disability benefits application is from December 1, 2014, when he alleges back injuries caused by a bus incident, through December 15, 2016, the date of the ALJ's decision denying benefits. After the decision, he submitted 89 pages of additional records dated both before and after December 15, 2016.

The Appeals Council reviewed the records that pre-date the ALJ's decision (March 17, 2015 to December 16, 2016 [R. 65, 109-73]) and found they do not show a reasonable probability of changing the outcome of the ALJ's decision. The council therefore denied his request for review of the ALJ's decision. Jan. 19, 2018 Notice of Appeals Council Action, R. 1-4. As discussed more fully in the section below, the Court has reviewed this group of records and finds they do not undermine the ALJ's RFC determination and his conclusion that James K. was not disabled on or before December 15, 2016. Substantial evidence in the record, including the newly submitted records, supports the ALJ's decision.

As for the records that post-date the ALJ's decision (January 17 to March 21, 2017 [R. 20-42]), the Appeals Council concluded they do "not relate to the period at issue" and therefore did "not affect the decision about whether you were disabled beginning on or before December 15, 2016." R. 2. The council advised him of his right to file a new application to consider whether he was disabled after December 15, 2016. R. 2.

In his appeal to this Court, James K. does not rely on any record that post-dates the ALJ's decision. His brief has fewer than four pages of legal analysis and does not cite any post-December 15, 2016 record to support any substantive argument. Rather, it

6

has one sentence in the section addressing the newly submitted records: "Finally, the post-hearing evidence does not pre-date the December 2016 benchmark but does illustrate the progression of Plaintiff's peripheral neuropathy." Pl. Br. 8, Docket No. 12. But if any neuropathy symptoms had worsened after December 15, 2016, it would not shed light on his functional work-related limitations as they existed on or before that date. Moreover, most of these 23 pages of treatment records do not relate to his diabetic neuropathy. Of the ones that do, they do little more than document the condition; they do not describe functional work-related limitations. *See* R. 25, 29, 31-32. The Court has reviewed these records and finds they do not relate to the period of disability at issue here.

### B. Diabetic Neuropathy

James K.'s only issue on appeal to this Court is whether the ALJ properly evaluated his diabetic neuropathy.[3] Specifically, he alleges the ALJ erred in finding his diabetes with peripheral neuropathy was a "non-severe" impairment at step two of the five-step sequential evaluation; the ALJ erred in not analyzing whether his diabetic neuropathy met or equaled Listing 11.14 at step three; and consequently the ALJ's determination at step five that he was not disabled and could perform other work – sedentary work with additional limitations – was not supported by substantial evidence in the record as a whole. Pl. Br. 7-10, Docket No. 12.

---

[3] He does not appeal the ALJ's findings regarding his work-related mental limitations as incorporated into the RFC. The sole reference to mental status in the legal analysis section of his brief is a sentence regarding a newly submitted medical record: "The 2015 psychological evaluation is also testing that documents the nature and extent of Plaintiff's psychiatric impairments, and pre-dates the December 2016 benchmark." Pl. Br. 8, Docket No. 12.

James K. asserts that the ALJ's "only analysis" in finding his diabetic neuropathy to be non-severe "consisted of two cites to medical notes, one regarding normal monofilament testing from December 2015 and one regarding the characterization of Plaintiff's diabetes as 'well controlled' in June 2016. A.R. at 48-49." *Id.* at 8-9. This characterization does not accurately describe the ALJ's evaluation of the evidence regarding James K.'s diabetes and his neuropathy symptoms.

First, the ALJ cited records that span the relevant time period. He cited to a record from October 2014, shortly before the alleged disability onset date of December 1, 2014, stating that James K.'s diabetes was stable on oral medications and describing it as "well controlled" (Ex. 5F) [R. 659, 661]; a December 2015 record stating that a monofilament examination was normal and his diabetes was "well controlled" (Ex. 13F) [R. 853, 856]; and a June 2016 record again listing his diabetes as "well controlled" (Ex. 13F) [R.822]. *See* R. 49.

Second, the ALJ cited the testimony of medical expert Dr. Jared Frazin in determining that James K.'s neuropathy was not severe. *See* R.48 ("Claimant has several non-severe impairments to include . . . diabetes mellitus with just mild neuropathy in the left lower extremity per the medical expert (Exhibit 18F)."); R. 52 ("After listening to the testimony and reviewing the objective medical evidence, Dr. Frazin testified that the claimant is subject to . . . diabetes with just mild neuropathy, with no complication").

Third, the ALJ and Dr. Frazin cited Exhibit 18F, which includes medical records relating to James K.'s diabetes and neuropathy symptoms. *See* R. 48, 52, 91.[4] Pages 5 and 6 of Exhibit 18F are the August 3, 2016 record of his appointment with Dr. Wallerstein regarding a physical exam and EMG of his left lower extremity. R. 975-76. It notes that he "has been experiencing sensory changes in the left lower extremity." Dr. Wallerstein's examination notes state: "Sensory intact to vibration and light touch. Mild stocking pattern of sensory change." His treatment notes state:

> Diabetic neuropathy
> Notes: - Continued efforts at weight loss, activity/exercise. - Patient education - reviewing the importance of skin inspection - especially bottoms of the feet and between toes, prevention of skin breakdown, puncture, infection given sensory deficits.

R. 976. This record supports the ALJ's determination that his diabetic neuropathy was not severe. It says nothing to support James K.'s argument that his neuropathy was a severe impairment that caused "marked" functional limitations with respect to his lower left extremity.

Exhibit 18F also contains a medical record of James K.'s orthopedic consultation with Dr. Martinson a couple of weeks later, on July 20, 2016, regarding further options to treat his back pain. R. 981-85. Dr. Martinson noted that James K. was "in no acute

---

[4] Exhibit 18F, page 5, is incorrectly cited as Exhibit 8F in the hearing transcript, and the ALJ repeats the wrong exhibit number in his decision. But the Court has reviewed all of the medical records, and it is clear that the record Dr. Frazin referred to – James K.'s August 2016 appointment with Dr. Wallerstein regarding the EMG of his lower left extremity – is found at page 5 of Exhibit 18F [R. 975], not 8F. The Court notes that Dr. Frazin also referred to other records by the wrong exhibit numbers (or the hearing reporter transcribed them incorrectly), which in the Court's experience is not uncommon. The Court will not list them here because the records pertain to subject matter not appealed by James K. and/or do not affect the substance of the records considered by the ALJ. Indeed, some records themselves contain obvious errors that do not otherwise impact the substance of that record. *See, e.g.,* R. 722, 724-29 (shoulder surgery records incorrectly identifying claimant as female).

9

distress able to sit comfortably throughout visit without excessive or inappropriate pain behavior/reactions/guarding." R. 984. Dr. Martinson also examined his extremities and noted:

> Extremities: Symmetrical without focal or asymmetric atrophy, deformity, joint synovitis or effusion, tone normal and symmetrical with range of motions within functional limits. Neurological: Sensory: No subjective paresthesias reported, intact to light touch and proprioception. Motor: Strength 4-5 over 5 and symmetrical to manual muscle testing without focal or asymmetric weakness but with functional weakness and reciprocal inhibition noted of the paraspinals and pelvic stabilizers. Reflexes: Muscle stretch reflexes 2 over 4 and symmetrical bilaterally in lower extremities, no ankle clonus bilaterally. Mobility: Ambulates without antalgic component gait with limited step length and trunk rotation, able to walk on heels and toes without difficulty.

R. 984. The ALJ cited some of these examination findings in his decision [R. 53], and they support his determination that James K.'s diabetic neuropathy was not severe.

Dr. Martinson also opined about James K.'s work-related functional limitations:

> #4: Discussion held with Mr. and Ms. K[] regarding return to work issues. Indicated that it would appear that sedentary work activities would be required for Mr. K[] with no repetitive/heavy lifting, carrying, repetitive trunk movements or prolonged trunk positions with allowance to change positions p.r.n. More objective restrictions would warrant a two day Functional Capacities Evaluation which is the most objective method for delineating physical capabilities/restrictions available at this time.

R. 985. The ALJ found Dr. Martinson's opinion consistent with his Residual Functional Capacity determination and the objective evidence in the record. R. 53-54.

Another 2016 record in Exhibit 18F similarly mentions that James K.'s diabetes is well controlled. At an April 5, 2016 follow-up appointment nine months after bariatric surgery for weight loss, the physician noted that, "[o]n a positive note, his diabetes has been under good control." R. 992.

Finally, the ALJ cited James K.'s own testimony about numbness in his left leg due to diabetic neuropathy. R. 52 (ALJ decision); R. 76-77 (James K. testimony).

To rebut the ALJ's determination, James K. points to the following medical records:

> But, in June 2016, Plaintiff was seen for "numbness and tingling of medial aspect of left foot." A.R. at 126.
> In July 2016, Plaintiff was seen for "ongoing numbness along the inside of his left lower leg." A.R. at 135.
> In August 2016, Plaintiff was seen by Dr. Daniel Wallerstein for sensory changes in his left lower extremity. A.R. at 975-976. Dr. Wallerstein also noted Plaintiff's "[s]ignificant history type II diabetes diagnosed in 2008." Id. The EMG was administered and Dr. Wallerstein made a number of specific findings, diagnosing Plaintiff with peripheral sensory-motor axonal polyneuropathy and diabetic neuropathy. Id.; *see also* A.R. at 111-113.

Pl. Br. 9, Docket No. 12.

The records at R. 111-13, 126, and 135 were submitted after the ALJ's decision, and the Appeals Council concluded they did not show a reasonable probability of changing the outcome. R. 2. The Court likewise finds that these records do not have materially new information or contradict the information relied upon by the ALJ.

The ALJ did not question the diagnosis of diabetes with neuropathy; he simply found that the record supported no more than mild neuropathy in the lower left extremity. Nothing in the newly submitted records undermines that finding, and the record as a whole supports it. James K. testified about the numbness at the September 30, 2016 hearing, and the medical expert Dr. Frazin testified about Dr. Wallerstein's August 3, 2016 EMG and physical examination documented in Exhibit 18. The June

11

2016 record [R.126-30, 813-17][5] identified by James K. notes "Foot complaints: numbness and tingling of medial aspect of left foot. Worse at night." but also states that the monofilament exam was normal and, notably, says nothing about functional limitations due to the neuropathy. Similarly, the July 2016 record [R. 135-38] of his primary care physician, Dr. Charles Kendall, notes "ongoing numbness along the inside of his left lower leg" but says nothing about functional limitations.[6]

As for the newly submitted record at R. 111-13, it is not really new information. It is the August 3, 2016 Nerve Conduction and EMG Report that includes the technical data from the lab results. R. 112-13. The specific findings and diagnosis [R. 111] that comprise the entire narrative portion of the lab report are contained verbatim in the record at R. 975-76, which documents James K.'s August 3, 2016 appointment with Dr. Wallerstein for the EMG and physical examination. Dr. Wallerstein added a "Treatment" section (quoted above) to the narrative. The medical expert testified about this record, and the ALJ cited it in his decision.

Other newly submitted records also do not support functional limitations greater than what the ALJ accounted for in his RFC determination of sedentary work with addition limitations. *See* R. 153 (Sept. 14, 2016: noting "numbness" and EMG "consistent with diabetic neuropathy"; R. 167-68 (Nov. 23, 2016: "Neuropathy – patient feels this is worsening. Had EMG earlier this year confirming d[iagnosis]. Numb – not

---

[5] The record of this June 30, 2016 office visit for foot care was included as a "new" record submitted post-decision at R. 126-30. However, it was already part of the records before the ALJ at R. 813-17, and medical expert Dr. Frazin's testimony specifically referred to it (Ex. 13F, page 8 [R. 816]). *See* R. 91.

[6] Dr. Kendall himself questioned whether James K. had neuropathy, but the formal diagnosis was made by Dr. Wallerstein based on the EMG in August 2016. *See* R. 137 ("The monofilament testing does not seem to show neuropathy. The numbness in the left leg seems to be an individual nerve issue.").

painful at this point." "Numbness in left leg is worse, to the point of being uncomfortable."); R. 170, 172 (Dec. 16, 2016: appointment for "chronic back pain that has been ongoing since 2014. . . . He denies any other complaints or current concerns." "Type 2 diabetes mellitus without complications. . . . Your A1C today was . . . excellent. Keep up the good work with your diet.").

James K.'s brief points to no medical record and no medical opinion stating that his neuropathy was severe or caused functional limitations greater than those determined by the ALJ in his RFC, specifically:

> sedentary work with certain limitations: sit/stand option whereby claimant alternates between sitting and standing at will without going off task; never climbing ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing; occasional stooping; occasional crouching; occasional crawling; occasional kneeling; occasional overhead reaching; occasionally operating foot controls bilaterally; avoid concentrated exposure to extreme temperatures, cold; avoid concentrated exposure to dangers to life or limb in the workplace and vibrations; and not required to work in high, exposed places; with regard to concentration, persistence and pace, work is limited to simple, routine, repetitive tasks; occasional changes in work setting; brief and superficial interaction with others meaning the 5th digit of the DOT code is an "8"; no complex decision-making; and no rapid, assembly-line paced work (daily quotas but not hourly quotas) in an environment free from illicit drugs and alcohol.

R. 51. When he filled out his Function Report, claimant did not mention his neuropathy symptoms when asked which conditions limit his ability to work. R. 341; R. 51 (ALJ decision discussing function report). He underwent two Department of Transportation (DOT) physical examinations, in August 2015 [R. 880-83] and August 2016 [R. 139-43], each time receiving a one-year driver's license, and neither examination noted any work-related limitations attributable to neuropathy.[7] When claimant testified at the

---

[7] The ALJ cited the 2015 DOT examination in his decision, R. 53; the record of the 2016 examination was not submitted to him.

13

hearing about numbness in his left leg due to diabetic neuropathy, he did not identify any functional limitations caused by the neuropathy. R. 76-77. Rather, when the ALJ asked him, "when you look at the constellation of problems that you are having and their relationship of your physical and mental impairments and your ability to work, how much of that is from the [December 2014] bus accident?", he replied "I have to say all of it." R. 102.

Based on a review of the entire record, including the newly submitted medical records, the Court finds there is substantial evidence to support the ALJ's decision regarding the severity of claimant's neuropathy and his RFC.

### C. Listing 11.14 (Peripheral neuropathy)

James K. also contends the ALJ erred at step three in not evaluating whether he met or medically equaled Listing 11.14:

Listing 11.14 Peripheral neuropathy, characterized by A or B:

A. Disorganization of motor function in **two extremities** (see 11.00D1), resulting in an **extreme limitation** (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities: **or**

B. **Marked limitation** (see 11.00G2) in physical functioning (see 11.00G3a), **and** in one of the following:

1. Understanding, remembering, or applying information (see 11.00G3b(i)); or

2. Interacting with others (see 11.00G3b(ii)); or

3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

4. Adapting or managing oneself (see 11.00G3b(iv)).

See 20 C.F.R., Part 404, Subpart P, Appendix 1 (emphasis added).

James K.'s brief devotes only a paragraph to this argument and does not state whether he satisfies paragraph A, B, or both, of the Listing. Pl. Br. 10, Docket No. 12. However, as he only reports neuropathy in his left lower extremity, he does not satisfy paragraph A's requirement of neuropathy in two extremities.

Paragraph B requires a "marked" limitation in physical functioning caused by claimant's neurological disorder.[8] *See* Listing 11.14, 11.00G2, 11:00G3a. James K. argues that the "August 2016 diagnostic testing confirmed peripheral neuropathy, subsequent office visits confirm sensory loss upon examination, and Dr. Kendall has opined that Plaintiff suffers from marked functional limitations," citing in bulk to a range of 57 pages of records at R. 111-13, 120-73. Pl. Br. 10, Docket No. 12. But claimant has not identified any medical record or opinion stating that his neuropathy caused any "marked" limitations.

James K. asserts he satisfied Listing 11.14 no later than the August 2016 EMG that confirmed the diagnosis of peripheral neuropathy. *Id.* The ALJ did not dispute the diagnosis, but a diagnosis by itself does not establish any particular level of functional work-related limitations. *See Trenary v. Bowen,* 898 F.2d 1361, 1364 (8th Cir. 1990) (ALJ's proper focus is on the functional limitations caused by the claimant's impairment).

Moreover, Dr. Kendall's only opinion regarding "marked" limitations was a September 2015 General Medical Source Statement [Ex. 12F, R. 801-08] that evaluated James K.'s "low back pain" [R. 801], not neuropathy. In addition, Dr. Kendall

---

[8] Paragraph B also requires a "marked" limitation in one of the four listed categories of *mental* functioning, *see* 11.00G3b, but claimant's perfunctory argument on Listing 11.14 does not address the mental functioning requirements. *See* Pl. Br. 10, Docket No. 12.

15

explicitly declined to give an opinion on several specific physical limitations such as the ability to walk and to sit and stand continuously; the need to change positions; the ability to bend, twist, climb, kneel, reach, push and pull, grasp, reach overhead, perform repetitive activities, and so forth. *See* R. 804 ("unable to answer these without more formal testing"). Claimant does not explain how this September 2015 record could support a finding that he satisfied the criteria for Listing 11.14B regarding "marked" limitation in physical functioning attributable to his neuropathy. Other records of Dr. Kendall, cited in the section above, also do not describe any "marked" functional limitations caused by claimant's diabetic neuropathy. *See* R. 29-33, 135-38, 153, 167-68, 822.

The ALJ had no reason to analyze James K.'s neuropathy under Listing 11.14, given his supported finding that claimant's diabetes with neuropathy was not a severe impairment. Substantial evidence in the record supports the ALJ's finding. The record, including the newly submitted medical records, does not support a finding that James K. met the requirements of Listing 11.14.

## RECOMMENDATION

Based on the foregoing and all the files, records and submissions, IT IS RECOMMENDED THAT:

1. James K.'s Motion for Summary Judgment [Docket No. 11] be DENIED.

2. The Commissioner's Motion for Summary Judgment [Docket No. 14] be GRANTED.

Dated: June 13, 2019                    s/David T. Schultz
                                        DAVID T. SCHULTZ
                                        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).